IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:21-MJ- 156 |
| ALEXANDER ALVAREZ (01) | |

## CRIMINAL COMPLAINT

**Alleged Offense:**

I, Task Force Officer Harold Ratliff, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

> On or about February 12, 2021, in the Northern District of Texas, defendant **Alexander Alvarez**, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

**Probable Cause:**

I, Task Force Officer Harold Ratliff, affiant, under oath, duly state that I am a sworn Task Force Officer with the Drug Enforcement Administration. The statements set forth in this affidavit are true and correct to the best of my knowledge and belief but are not inclusive of all the evidence or information in the case.

1. On February 12, 2021, a Haltom City police officer was travelling south on Fossil Creek Boulevard when he noticed a red Cadillac fail to come to a complete stop at a stop sign before making the turn west onto the service road. The officer caught up to the Cadillac as it turned southbound on Beach Street. A license plate query showed the registration had expired in June 2020 and showed the car had unconfirmed insurance.

2. The officer activated the lights to initiate a traffic stop. Rather than stop, the Cadillac continued to travel south for a short distance before eventually turning onto Northern Cross Boulevard and coming to a stop. This

Complaint - Page 1

concerned the officer because, based on his training and experience, sometimes a person will continue driving to buy time to hide contraband or obtain weapons to use against law enforcement.

3. The officer met with the driver, who provided his Texas driver's license identifying the driver as **Alexander Alvarez**. **Alvarez** could not, however, provide proof of insurance coverage. The officer explained why he stopped **Alvarez**, and he informed the officer that he was headed to the airport to catch a flight to Puerto Rico. **Alvarez** said he believed there were warrants for his arrest by Haltom City and Fort Worth Police. The officer asked if he had ever been in trouble for anything and **Alvarez** responded, "No," following up with, "Mostly for traffic warrants." The officer asked if he had been arrested for anything in the past, and **Alvarez** said he had a previous theft arrest.

4. Based on **Alvarez**'s responses, the officer believed **Alvarez** was being evasive in his answers and did was not providing the whole truth. The officer had specifically asked Alvarez if he had ever been arrested for any robberies, burglaries, drug charges, DWIs, to each of which **Alvarez** responded, "No," except when asked about for drug charges, to which he only mumbled and provided no discernible affirmative or negative response. A review of **Alvarez**'s criminal history shows he has a 2017 state jail felony conviction for drug possession.

5. Two other officers arrived on scene to assist as the stopping officer conducted a background inquiry on **Alvarez**. That inquiry provided the officer with **Alvarez**'s criminal history and showed **Alvarez** had warrants for his arrest out of Fort Worth and Arlington police departments.

6. The officer returned to **Alvarez** and had him get out of the car. **Alvarez** consented to a search of his person, and the officer had **Alvarez** place his wallet and phone on the back of his car. The officer searched **Alvarez** but did not find any contraband or weapons on him. **Alvarez** asked me why he was being searched, and the officer explained he learned **Alvarez** had a previous drug conviction. **Alvarez** responded, that was in the past and claimed his life had changed since he had a baby four months ago.

7. The officer then asked **Alvarez** if there was anything illegal in his vehicle.

Complaint - Page 2

Rather than just respond, **Alvarez** looked at the trunk of his car and started backing away from the car. This gave the officer the impression that **Alvarez** was trying to distance himself from the car or the items in it. **Alvarez** said he only had his suitcases and his bag in the car. When the officer asked Alvarez if he could search the car, Alvarez replied, "Go ahead, man."

8. Inside **Alvarez**'s wallet, an officer found two small bags. One bag contained several chopped-up pills inscribed with the number "30" on them. The other bag contained a white-powdery substance the officer recognized from his training and experience to be consistent with the appearance of cocaine. At this point, **Alvarez** was placed under arrest.

9. Inside the center console of the car, officers found a large sum of money in multiple denominations. Inside a backpack located in the trunk, officers found multiple items of drug-trafficking paraphernalia. They also found several bags containing about 548 grams of a white-powder substance that a later field test would report presumptively positive for cocaine. They further found several bags filled with round, blue pills inscribed with "30" and "M," identical to the pills found in **Alvarez**'s wallet. They were later determined to contain Fentanyl.

10. Along with the drugs, officers found several unused blue bags that were identical to the bags found in **Alvarez**'s wallet. In the pockets of a black jacket in the trunk the officers found a clear bag containing several more round, blue pills inscribed with "30" and "M." These bags were labeled "Lansinoh," which is a popular brand of bags used to store breast milk. The officers took note of this since **Alvarez** mentioned that he is a new father.

11. Based on the amount of drugs discovered, the numerous items of drug-trafficking paraphernalia, the officers also arrested **Alvarez** for drug trafficking. The Haltom City police also obtained a state search warrant for **Alvarez**'s Hidden Lakes apartment. Inside, officers seized more currency in multiple denominations, an electronic money-counting machine, a firearm, .223 caliber ammunition, a Glock magazine, a clear bag containing suspected marijuana, a Food Saver vacuum sealer, several rubber bands, and a Glock conversion kit.

12. In a post-*Mirandized* interview conducted before the search warrant was obtained, **Alvarez** admitted he lived in the Hidden Lakes apartment. He said he was not on the lease but has resided there by himself for the past year until his mother moved in after losing her job due to the COVID pandemic. **Alvarez** did claim to have a job, but could not name his employer, only saying he worked at a warehouse.

Based upon the above facts and circumstances, I respectfully submit that there is probable cause to believe that **Alexander Alvarez** did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

Task Force Officer Harold Ratliff
Drug Enforcement Administration

SWORN AND SUBSCRIBED before me, March 9, 2021, at 10:07 am/pm, in Fort Worth, Texas.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

Complaint - Page 4